UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| James A. Simon, | Case No. 0:16-cv-1969-ADM-KMM |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| L. LaRiva, | |
| Respondent. | |

James A. Simon, 1922 Simon Road, Huntertown, Indiana 46748, petitioner pro se

Ana H. Voss, Bahram Samie, and D. Gerald Wilhelm, United States Attorney's Office, counsel for respondent

      James A. Simon seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  In his habeas petition, he is challenging the Bureau of Prisons' recent decision to cancel or delay his planned placement on home confinement for the final three months of his federal sentence.  Mr. Simon was released to home confinement one week ago.  For the reasons set forth below, the Court recommends that the petition be denied.

**I.**    **Factual and Procedural Background**

      This case is not Mr. Simon's first attempt to obtain a writ of habeas corpus pursuant to § 2241.  On January 25 of this year, Mr. Simon filed a petition challenging the BOP's decision to place him on home confinement for only three months at the end of his sentence rather than the six-month term it had originally considered.  *Simon*

*v. LaRiva*, 16-cv-00146-ADM-TNL, ECF 1.  Ultimately, the district court denied that petition, finding that the BOP's discretionary determination that three months was an appropriate amount of community confinement was beyond the Court's authority to review.  *Id.*, ECF 17 (order adopting report and recommendation).  The report and recommendation prepared in that case contained a detailed recitation of the factual history relevant to the current claim as well, so it does not need to be restated.  *Id.*, ECF 14 (report and recommendation).

Mr. Simon started this case on June 13, 2016, by filing the petition now before the Court.  (ECF 1.)  In an effort to handle the matter expeditiously, on June 16, 2016, the Court ordered respondent to answer the petition within seven days (ECF 5), which respondent did.  (ECF 14.)

**Recent Developments**

At the time he filed this petition, Mr. Simon was still confined at the Federal Medical Center in Rochester, Minnesota ("FMC Rochester"), nearing the end of his federal prison sentence.  He has a projected final release date of September 2, 2016, based on the "good time" he has earned while incarcerated.  (ECF 16, Denny Decl. ¶ 7.)  He was scheduled to be released to home confinement beginning on June 1, 2016.  (*Id.* ¶ 8.)

On May 31, Dr. Paul Harvey, the Regional Medical Director for the region containing FMC Rochester, placed a "medical hold" on Mr. Simon due to his need for a new pacemaker battery.  (*Id.*; ECF 15, Harvey Decl. ¶ 19.)  This hold functionally

2

cancelled Mr. Simon's home confinement placement the day before he was scheduled to leave. (*Id.* (explaining that "[a] medical hold indicates that based on the clinical judgment of a medical provider an inmate should not be transferred from his current facility so that he may receive recommended treatment and maintain continuity in his care at that facility").) Dr. Harvey told Mr. Simon at the time the hold was put in place that Mr. Simon would likely remain at FMC Rochester until his early September release date, (*Id.*; ECF 2, Simon Decl. ¶ 21), a prediction that has been proven incorrect by subsequent events.

**Mr. Simon's Recent Medical History**

By November, 2015, Mr. Simon, the BOP, and his medical care providers were all aware that his cardiac pacemaker would soon need replacing. It was on "advisory status," meaning that it needed to be checked more often than before and that its replacement would fairly soon become necessary rather than optional. (Harvey Decl. ¶¶ 5, 9.) Mr. Simon was seen regularly, either by phone or in the Mayo Clinic Health System's Pacemaker Clinic, between November 16, 2015, and May 17, 2016, to monitor the situation. (*Id.* ¶¶ 9-16.) Although Mr. Simon requested early replacement of his pacemaker so that surgery would not interfere with his release to home confinement in June, he was told that replacement would not occur until the unit entered the "elective" phase, where some functions were shut off to conserve power. (Simon Decl. ¶ 17.) Mr. Simon made arrangements to have his unit replaced following his release to home confinement. (*Id.* ¶ 18.) He was scheduled to be seen

3

in July at the same hospital where the pacemaker was first installed.

On May 17, 2016, two weeks before his planned release, providers at the Pacemaker Clinic saw Mr. Simon once again. (Harvey Decl. ¶ 16 & Ex. A at 107-08.) The providers discovered that Mr. Simon's pacemaker had entered the elective replacement index on April 23, 2016, and recommended that the unit be replaced within a few weeks, or sooner if the alarm began to sound. (*Id.*)

**The Medical Hold**

On May 31, 2016, after Mr. Simon's family was on its way to Minnesota to bring him home, Dr. Harvey placed the "medical hold" on him, preventing his release. (Harvey Decl. ¶ 19; Simon Dec. ¶ 21.)

Shortly thereafter, in a seeming effort to expedite his release, Mr. Simon raised the possibility that his pacemaker may no longer be medically necessary. (Harvey Decl. ¶ 20.) Mr. Simon's medical team made appointments for him to see a cardiologist about the continuing medical need for the pacemaker and for him to have the pacemaker replaced "shortly" thereafter, if it remains necessary. On June 28, 2016, the respondent advised the Court that the appointments were scheduled for early July. (ECF 20.) Contrary to Mr. Simon's assertion that his home confinement would not occur at all, the BOP advised the Court that the medical hold would be lifted "as soon as Petitioner is medically able to be referred to home confinement," and that home confinement will be requested "as soon as is practicable." (ECF 20.)

4

On July 11, 2016, Mr. Simon's pacemaker was replaced at the Mayo Clinic in Rochester. Both Mr. Simon and the BOP updated the Court. (ECF 25, 33.) Seven days later, FMC Rochester staff confirmed that his incision was free of infection and was healing. (ECF 33, Resp't's Update at 1.) That same day the medical hold was lifted and Mr. Simon's application for home confinement was resubmitted.

On July 22, 2016, eleven days after Mr. Simon's pacemaker was replaced, the BOP released him to home confinement. (ECF 33.) Barring an unforeseen change in his status, he will remain there until the conclusion of his sentence on September 2, 2016.

## II. ANALYSIS

James Simon originally sought a writ of habeas corpus requiring the BOP to place him in home confinement immediately. Now he urges the Court to decide his case on the merits, despite his release. The Court declines Mr. Simon's invitation and recommends that Mr. Simon's § 2241 petition be dismissed as moot. Moreover, even if the Court were to reach the merits of Mr. Simon's petition, it would still recommend that it be dismissed.

### A.   Mr. Simon's Petition is Moot.

Mr. Simon was released from custody to home confinement on July 22, 2016, giving rise to a strong presumption of mootness. "Article III of the United States Constitution limits the jurisdiction of the federal courts to actual, ongoing cases and controversies." *Ali v. Cangem*, 419 F. 3d 722, 723 (8th Cir. 2005) (en banc) (internal

5

citations omitted). When the issues in dispute "lose their life" because of a change in circumstances that renders the Court unable to grant the relief sought, the case is considered moot. *Id.* at 723-24.

In a habeas case challenging the fact or duration of a prisoner's confinement, his or her release from custody often, but not always, renders the claim moot because the Court can no longer grant the relief sought. However, several exceptions to the mootness doctrine govern its application in the habeas context.

Although Mr. Simon asks the Court to address two legal questions he claims are raised by his petition despite his release, he offers no analysis to support that request or to resist a finding of mootness. Nonetheless, it is true that release of a prisoner does not in every instance render his habeas petition moot. Four exceptions exist to the general presumption of mootness in a case such as this.

> Under these exceptions, the Petition should not be dismissed as moot if: "(1) secondary or collateral injuries survive after resolution of the primary injury; (2) the issue is deemed a wrong capable of repetition yet evading review; (3) the defendant voluntarily ceases an allegedly illegal practice but is free to resume it at any time; or (4) it is a properly certified class action suit."

*Sayonkon v. Beniecke*, No. 12-cv-27 (MJD/JJK), 2012 WL 1621149, at *2 (D. Minn. Apr. 17, 2012) (quoting *Riley v. I.N.S.*, 310 F. 3d 1253, 1256 (10th Cir. 2002)). If any of these circumstances are present, dismissal is not required. However, none of these

exceptions apply to Mr. Simon's petition.[1]

First, there are no continuing collateral consequences from Mr. Simon's shortened period of house arrest. *See, e.g.*, *Abdulle v. US Dep't of Homeland Sec.*, No. 13-cv-1415 (PJS/SER), 2013 WL 6058952, at *3 (D. Minn. Nov. 18, 2013) (dismissing habeas petition challenging detention in ICE custody as moot upon petitioner's release). Second, Mr. Simon's allegedly improper detention is not "capable of repetition but evading review," because there is no indication that Mr. Simon himself will again be returned to FMC Rochester for reasons related to his medical condition. *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (holding that the "capable of repetition doctrine applies only in exceptional situations" where "there is a reasonable expectation that the *same complaining party* will be subject to the same action again") (emphasis added).

Similarly, there is no suggestion that Mr. Simon was released simply to preclude this Court's review, and he will be reincarcerated once the matter is dismissed. Instead, the BOP expedited Mr. Simon's release following his surgery so that he was home four days after being cleared as "infection free" and a mere eleven days after his pacemaker surgery.

In sum, Mr. Simon's habeas petition must be dismissed because his release to home confinement – – the only relief sought in his petition – – has occurred.

---

[1] This habeas case is not a class-action suit, so the fourth exception is completely inapplicable.

B.     **Mr. Simon's Petition is Without Merit.**

Even were Mr. Simon's petition not rendered moot by his release, the Court would still recommend its dismissal. As the Court found in Mr. Simon's previous and very similar petition, the Court lacks the legal authority to second-guess the BOP's discretionary determination regarding his home confinement.

1.     **Community Confinement and the Second Chance Act.**

Federal inmates are eligible to serve the last portion of their sentences, up to twelve months, in a Residential Reentry Center. 18 U.S.C. § 3624(c). When deciding whether to place an inmate at a halfway house or on home confinement at the end of his sentence, the BOP must conduct an individualized assessment of five factors set forth at 18 U.S.C. § 3621(b), striving to afford a prisoner "a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." 18 U.S.C. § 3624(c)(1).

The Second Chance Act vests the BOP with discretion to determine whether and for how long to place an inmate in community confinement. However, it does not mandate any minimum term at such a placement. *See, e.g., Barakat v. Fisher*, No. 13-cv-1296 (JNE/SER), 2013 WL 6058932, at*6 (D. Minn. Nov. 18, 2013) ("The SCA does not mandate the BOP grant any time in [community confinement]"); *Rounds v. Nicklin*, No. 13-cv-440 (MJD/AJB), 2013 WL 3088628, at *3 (D. Minn. June 18, 2013). Courts in this district, including the Court that denied Mr. Simon's previous habeas petition, have held that 18 U.S.C. § 3625 specifically precludes judicial

8

review of the BOP's discretionary decisions regarding community confinement placement, as long as they are based upon the statutorily required individualized assessment. *See, e. g.*, *Simon v. LaRiva*, No. 16-cv-146-ADM-TNL, 2016 WL 1610603, at *1 (D. Minn. Apr. 21, 2016); *Crawford v. Nicklin*, No. 13-cv-2462-JRT-SER, 2014 WL 5386999, *7-8 (D. Minn. Feb. 11, 2014).

## 2. Postponement of RRC Placement for James Simon.

Against this legal and factual backdrop, Mr. Simon's petition cannot succeed. To the extent that Mr. Simon is challenging the BOP's decision that his medical condition precluded community placement for a time, that challenge must fail. As explored above, such exercise of discretionary authority is beyond review. It is clear from the extensive record developed in Mr. Simon's previous habeas proceeding and in this case that the BOP considered the enumerated factors found at 18 U.S.C. § 3621 as well as the very latest information regarding his medical condition: such an individualized assessment readily satisfies the statute. *See, e.g.*, *Stiger v. Haynes*, No. 2:13-cv-00025-SWW-JJV, 2013 WL 3965425, at *2 (E.D. Ark. July 31, 2013) (rejecting § 2241 petition challenging denial of RRC placement based upon medical condition).

Mr. Simon strives to avoid the outcome plainly required by § 3625 and the many cases applying it to preclude review of BOP discretionary decisions by asserting that RRC placement in his case was denied due to a "blanket policy." (*See* Simon Decl. ¶ 23; ECF 18, Am. Pet. at 7, 9-12.) Specifically, Mr. Simon asserts that either Dr. Harvey personally or the BOP generally, has a policy of denying community

confinement to all inmates at "medical care level III." A blanket policy categorically denying community placement to a group of people might run afoul of the law because it would undermine the statutorily-required individualized assessment. *See Fults v. Sanders*, 442 F.3d 1088, 1092 (8th Cir. 2006)(holding it is impossible for the BOP to assess the five factors on a categorical basis). No such policy is behind the BOP's decision in his case.

The affidavits prepared by Dr. Harvey and Dr. Denny, the supporting medical records, and Mr. Simon's eventual release to home confinement all undermine Mr. Simon's theory that he was temporarily denied community placement because he was placed at care level III. Instead, the record plainly demonstrates that Dr. Harvey placed the hold on Mr. Simon because of the changed pacemaker status.

Finally, even if the Court had the authority to review the BOP's decision to suspend Mr. Simon's placement on home confinement, it would conclude that the BOP did not abuse its discretion. The timing of Mr. Simon's pacemaker moving from an advisory status to a more acute one was unfortunate. And, given his careful efforts to prevent his pacemaker's expiration from interfering with his release to home confinement, his frustration is understandable. However, the BOP cannot be faulted for wanting to make sure that Mr. Simon's serious medical condition was properly cared for prior to releasing him to home confinement, where they have much less

control over, though likely continuing responsibility for, his health.[2] The BOP did not misuse its discretion in this case.

## III. CONCLUSION

For the reasons stated above, this Court recommends the following disposition:

1. James Simon's Petition (ECF 1) and Amended Petition (ECF 18) should be **DENIED**.

2. This action should be **DISMISSED**.

Dated: August 3, 2016                          *s/Katherine Menendez*
                                               Katherine Menendez
                                               United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.

---

[2] The Court declines Mr. Simon's invitation to assume that a dispute over which arm of the BOP will pay for the procedure was the true motivation for the suspension of his community placement. (*See* Am. Pet. at 15.) Nor is the Court persuaded that the medical hold reflects retaliation for Mr. Simon's earlier litigation. (*See id.* at 15-17.)